IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Adil BOUTAHLI, | |
| Plaintiff, | **Hon. Joseph H. Rodriguez** |
| v. | Civil No. 16-1186 (JHR/JS) |
| 7-ELEVEN, INC., et al., | **OPINION** |
| Defendants. | |

Currently pending before the Court are three motions, each of which were filed on September 13, 2019. The first pending motion is the Motion for Summary Judgment filed by Defendants North Bay Associates, LLC, and the Feil Organization. [Docket No. 90.] The second pending motion is the Motion to Preclude James M. Dallas, CPP, PI and William J. Birks Jr., CPP, CSC, CHS-III from Testifying brought by Defendant/Third-Party Plaintiff 7-Eleven, Inc. [Docket No. 92.] Finally, the third pending motion is the Motion for Summary Judgment filed by 7-Eleven, Inc. [Docket No. 92.] For the reasons expressed below, the Court will grant both of the pending motions for summary judgment and dismiss the remaining motion as moot.

I. **Factual and Procedural History**[1]

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to the party opposing summary judgment — here, Plaintiff. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d. 496, 499 n.2 (D.N.J. 2015) (disregarding

This suit stems from an armed robbery of a 7-Eleven just after midnight on January 10, 2014. At the time of the incident in question, Plaintiff Adil Boutahli was working the overnight shift at the 7-Eleven located at 6001 Westfield Avenue in Pennsauken, New Jersey ("Store 10932" or "the store"). He alleges that he was the only representative at the store, which "was typical of his tenure at Store 10932." [Docket No. 1-3, ¶ 38.] Just after midnight, Third-Party Defendants Anthony T. Ervin and Charles Walls, along with a third accomplice, entered the store and demanded Boutahli give them the contents of the cash register. Apparently dissatisfied with Boutahli's compliance, one of the robbers then pistol-whipped Boutahli in the back of his head. One or more of the robbers then shot Boutahli four times. They then took what they could and fled.

Fortunately, Boutahli survived the attack, though he did suffer a series of serious and sometimes permanent injuries as a result of it. Boutahli now seeks recompense for those injuries and their associated expenses from various parties.

On December 23, 2015, Boutahli filed a lawsuit in this District. However, on January 8, 2016, he voluntarily dismissed that action and instead commenced the present action by filing a complaint in the Superior Court of New Jersey, Law Division, Camden County. Boutahli named the following Defendants: 7-Eleven, Inc. ("7-Eleven"); Seven-Eleven Japan Co. Ltd.; Seven and 1 Holdings Co., Ltd.; North Bay Associates ("North Bay"); the Feil Organization; and Mohamed Alkiyal; as well as ABC Corporation(s) 1-10; DEF Corporation(s) 1-10; GHI Corporation(s) 1-10; John Doe(s) 1-

---

portions of the parties' statements of material facts on these grounds); <u>Jones v. Sanko Steamship Co., Ltd.</u>, 148 F. Supp. 3d 374, 379 n.9 (D.N.J. 2015) (same).

10; and JKL Corporation(s) 1-10.[2] On March 1, 2016, Defendant 7-Eleven removed the action to this Court. [Docket No. 1.]

As noted above, only three of the above Defendants are implicated in the pending motions: 7-Eleven, North Bay, and the Feil Organization (the "moving Defendants"). 7-Eleven was a franchisor of the store where Boutahli worked. It also was the lessor of the property itself. North Bay subleased the premises where the store was located to 7-Eleven. The Feil Organization does not have any connection to the property in question.[3] In his Complaint, Boutahli broadly alleges that the moving Defendants' negligence, carelessness, and recklessness, as well as their willful and purposeful policies, directly and proximately caused his injuries.

On September 13, 2019, after several years of motions practice involving mostly discovery issues, the moving Defendants filed the pending motions. Specifically, the Feil Organization and North Bay filed a Motion for Summary Judgment [Docket No. 90] and 7-Eleven filed both a Motion to Preclude two of Boutahli's experts [Docket No. 91] and a Motion for Summary Judgment [Docket No. 92]. On September 23, 2019, Boutahli filed the same response to the moving Defendants' Motions for Summary Judgment. [Docket Nos. 93-95.] On the same day, Boutahli filed his response to 7-Eleven's Motion to Preclude. [Docket No. 96.] On September 30, 2019, 7-Eleven filed its replies. [Docket Nos. 97-98.] For the reasons expressed below, the Court will grant the moving

---

[2] On April 19, 2016, pursuant to the parties' stipulation, the Court dismissed Alkiyal with prejudice. [Docket Nos. 13-14.]

[3] In fact, North Bay and the Feil Organization suggest that the only reason that Boutahli included the Feil Organization is "simply because the Managing Member of North Bay, Jeffrey J. Feil, is also the President of the Feil Organization." [Docket No. 90-1, at 2-3.] Boutahli does not address this in his response, nor does he refer to the Feil Organization at all in his response.

Defendants' Motions for Summary Judgment and dismiss the remaining motion as moot.

## II. Standard of Review

### A. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord FED. R. CIV. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place,

Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Discussion

#### A. The Moving Defendants' Motion for Summary Judgment

The primary argument that the moving Defendants put forth in their Motions for Summary Judgment are that they did not owe Boutahli a duty of care because they were not a "possessor of land."[4] As many a first-year law student can confirm, a plaintiff will only succeed on a negligence claim if the following four elements are proven: (1) a duty

---

[4] The moving Defendants also argue that the incident in question was not foreseeable, that they cannot be held liable under vicarious liability or agency theories, that the claim for intentional infliction of emotional distress must be dismissed, and that the claim for punitive damages must be dismissed. [See Docket No. 90-1, at 12-18; Docket No. 92-1, at 21-40.] Each of those arguments was either waived by Boutahli or will be deemed irrelevant by the Court, given its ultimate conclusion that the moving Defendants are not possessors of the land in question. Therefore, the Court reserves judgment on those issues.

5

of care owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, (3) an injury to the plaintiff that was proximately caused by that breach, and (4) damages. See Smith v. Kroesen, 9 F. Supp. 3d 439, 442 (D.N.J. 2014). This case turns on the first requirement: duty.

"Whether a duty of care exists, as well as the scope of the duty owed, are questions of law that must be decided by the court." Aylward v. Wal-Mart Stores, Inc., Civil Action No. 10-4799, 2011 WL 2357762, at *5 (D.N.J. June 9, 2011). "New Jersey courts rely on the Restatement (Second) of Torts Section 344 to determine the duty of care owed to business invitees." Worster-Sims v. Tropicana Entm't, Inc., Civil No. 13-1981, 2014 WL 4978588, at *6 (Oct. 6, 2014); see Clohesy v. Food Circus Supermarkets, 694 A.2d 1017, 1022-23 (N.J. 1997). Section 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are being done or are likely to be done, or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.

RESTATEMENT (SECOND) OF TORTS § 344.

Crucial to the existence of a duty of care in a case like this, then, is whether the defendant that allegedly owed a duty was a "possessor of [the] land" in question. See id. Restatement (Second) of Torts § 328 E defines a "possessor of land" as

> (a) a person who is in occupation of the land with intent to control it, or
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

RESTATEMENT (SECOND) OF TORTS § 328 E; Parks v. Rogers, 825 A.2d 1128, 1131 n.2 (N.J. 2003).[5]

New Jersey courts have not squarely addressed what it means for an entity to be "in occupation of . . . land with intent to control it." They have not couched their decisions with respect to franchisors' duties of care in the language of Section 328 E. See J.M.L. ex rel. T.G. v. A.M.P., 877 A.2d 291, 296 (N.J. Super. Ct. App. Div. 2005). Instead, like other jurisdictions, they "have invoked agency principles to determine the imposition of liability on a franchisor for the tortious and criminal acts" that occurred on the franchised premises. See id. (addressing a criminal act by a franchisee); see Simpkins v. 7-Eleven, Inc. 2008 WL 918482 (N.J. Super. Ct. App. Div. Apr. 7, 2008) (addressing a criminal act by a third party); see also Hoffnagle v. McDonald's Corp., 522 N.W.2d 808, 813 (Iowa 1994) ("[W]ho is a possessor of land . . . depends primarily upon the amount of control that a particular person exercises over the property." (quoting Downs v. A & H Constr., 481 N.W.2d 520, 524 (Iowa 1992)); Wise v. Kentucky Fried Chicken Corp., 555 F. Supp. 991, 994-95 (D.N.H. 1983) (considering "control" in determining whether the franchisor was a possessor of land); Coty v. U.S. Slicing Machine Co., Inc., 373 N.E.2d 1371, 1375 (Ill. App. Ct. 1978) (same). In other words, while New Jersey courts have not directly addressed how to determine whether a franchisor is a "possessor of land," as contemplated by Section 328 E, they have

---

[5] In effect, Section 344 requires two inquiries. The first is whether the party is a possessor of land. If that question is answered in the affirmative, then the Court must address the second inquiry: whether the harm at issue was foreseeable. See Clohesy, 694 A.2d at 1021-22. The parties devote substantial portions of their briefs to the question of foreseeability. However, because the Court will rule that the moving Defendants do not qualify as possessors of land, the question of foreseeability is irrelevant. Therefore, as noted in the footnote above, the Court reserves judgment on the question of foreseeability.

7

answered the same fundamental question – whether a franchisor owes a duty of care to the franchisee's customers and staff – by considering agency principles such as "[t]he degree of control, the actual exercise of control and the use of slogans or the issuance of assurances concerning the safety of patrons." J.M.L., 877 A.2d at 296. Under New Jersey precedent, the amount of control that the franchisor exerted over the franchised property is the central factor in determining whether the franchisor owed a duty. See id.

The moving Defendants cite three New Jersey cases with respect to this question. [Docket No. 98, at 4.] The first is the above-cited J.M.L. ex rel. T.G. v. A.M.P., a case about the liability of a karate studio franchisor with respect to the franchisee's sexual harassment of an employee. 877 A.2d 291 (N.J. Super. Ct. App. Div. 2005). The court held that the franchisor's "role as franchisor does not allow imposition of liability, direct or vicarious, under the" New Jersey Law Against Discrimination. Id. at 297. The court reasoned that the franchisor "provided little or no guidance on the day-to-day operations of the franchise[]." Id. It was true that the franchisor "conducted monthly member meetings," was a "member[] of the board that issued black belts to qualifying students from all franchises," required each franchise "to carry franchise branded merchandise at each site," and "provided marketing and sales guidance to franchisees." Id. But "franchisees were not required to use a pre-packaged marketing plan or contribute to a marketing plan devised by" the franchisor, nor did the franchisor have "any role in hiring or terminating employees or any other personnel issues at any franchise." Id. Moreover, "[e]ach franchise was individually owned and operated as an individual business." Id. Finally, and importantly, the franchisor did not own the franchise. Id. Considering all of the above details, the court determined that the

franchisor's control over the franchise was insufficient to create a duty to prevent an employee from being sexually harassed by the franchisee. Id.

The second case that the moving Defendants cite is Simpkins v. 7-Eleven, Inc. 2008 WL 918482 (N.J. Super. Ct. App. Div. Apr. 7, 2008). Simpkins, like this case, involved a violent attack at a 7-Eleven, though in that case the victim was not an employee but a customer. See id. at *1. One of the plaintiff's experts opined that 7-Eleven had "breached a duty of care to plaintiff by not providing more rigorous security training for" the sole clerk on duty. Id. at *5. The court noted, however, that the expert had failed to "differentiate . . . between the duty owed by the 7-Eleven corporate defendant and that by the individual franchisee." Id. The court pointed out the myriad responsibilities that 7-Eleven retained in its role as franchisor, including "own[ing] all fixtures and equipment in the store, directly pay[ing] the store's utility bills, and provid[ing] a variety of advertising services to the franchisee," in addition to preparing and maintaining financial records for the franchisee." Id. Nevertheless, the day-to-day obligations, including personnel issues, were squarely in the province of the franchisee. Id. at *8. The court concluded that "there is no evidence that 7-Eleven participated in the day-to-day affairs of the . . . store, other than in respect to certain financial activities." Id. The court also assigned particular importance to a clause of the franchise agreement that established that the franchisee

> shall be an independent contractor and shall control the manner and means of the operation of the store and exercise complete control over the responsibility for all labor relations and the conduct of [the franchisee's] agents and employees. [The franchisee] and [its] agents and employees shall not be considered or held out to be agents or employees of 7-ELEVEN and shall not negotiate or enter any agreement or incur any liability in the name or on behalf of, or that purports to bind, 7-ELEVEN.

9

Id. Therefore, the court held, "there is no legal basis to impose upon 7-Eleven vicarious liability for the event that led to plaintiff's injuries." Id.

Finally, the moving Defendants cite Coalson v. General Motors Co., another unpublished Appellate Division opinion. Case No. A-4589-12T3, 2014 WL 5460854 (N.J. Super. Ct. App. Div. Oct. 29, 2014). Like the previous two cases, the issue here was whether a franchisor "had control over the day-to-day operations" of the franchised car dealership. Id. at *1. The court found that the franchisor "ha[d] authority over limited aspects of the dealership's business operations," including "authority regarding financing matters, advertising and sale promotions, the ordering and distribution of automobiles and parts, and policies regarding dealership employees." Id. at *3. But the franchise agreement clearly established that "neither the dealership nor [the franchisor] intend[ed] to be the 'agent or legal representative of the other for any purpose'" and that "the dealership 'is solely responsible for all expenditures, liabilities and obligations incurred or assumed by [the dealership] for the establishment and conduct of its operations.'" Id. Thus, the court concluded that there were "no competent facts in the record to suggest that [the franchisor] exercised any control over the day-to-day operations of the dealership or its employees, or the manner in which the snow removal work," which was the central issue in the case, "was performed." Id. at *4. The franchisor, therefore, could not be held liable for the incident in question. Id.

As noted above, these cases do not squarely addressed how to determine whether an entity qualifies as a "possessor of land" and therefore owes a duty to invitees to that land pursuant to the Restatement (Second) of Torts § 344. But the above cases are still helpful to this Court because they provide an agency-based framework for determining the amount of control that a franchisor had over a franchised location. And, as the court

10

in J.L.M. noted, other jurisdictions have used that precise framework for determining whether a franchisor was a "possessor of land" per Section 328 E. See, e.g., Hoffnagle v. McDonald's Corp., 522 N.W.2d 808, 813 (Iowa 1994) ("[W]ho is a possessor of land . . . depends primarily upon the amount of control that a particular person exercises over the property." (quoting Downs v. A & H Constr., 481 N.W.2d 520, 524 (Iowa 1992)); Wise v. Kentucky Fried Chicken Corp., 555 F. Supp. 991, 994-95 (D.N.H. 1983) (considering "control" in determining whether the franchisor was a possessor of land); Coty v. U.S. Slicing Machine Co., Inc., 373 N.E.2d 1371, 1375 (Ill. App. Ct. 1978) (same). Therefore, this Court is of the opinion that the agency analysis utilized in the three above-discussed cases is the appropriate standard to apply here. In short, they establish that the first barrier Boutahli must overcome is showing that the moving Defendants exerted day-to-day control over the store. Unfortunately for Boutahli, however, the facts do not support that assertion.

At this point in the discussion, the Court must address the moving Defendants' separately, starting with 7-Eleven. It is true that 7-Eleven, like the franchisors in the above cases, does retain some rights and responsibilities with respect to the store pursuant to the franchise agreement. As Boutahli argues, for instance, 7-Eleven retains the right to maintain certain bookkeeping records, requires some training with respect to government-regulated products, and provides certain equipment to the franchisee. [Docket No. 92-1, at 4; see also Docket No. 1-6 (the franchise agreement).] And 7-Eleven is permitted to convert the store into a gas station or a car wash, to add ATMs, photo kiosks, signs, and billboards to the store, and to erect a telecommunications tower on the property. [Docket No. 93, at 6.] 7-Eleven also requires the store to carry certain products, and it sends business consultants on a weekly basis to provide

recommendations. [Docket No. 92-1, at 4-5.] However, the franchisee is under no obligation to accept those recommendations. [Id.] The franchisee, and not 7-Eleven, is "responsible for all maintenance, repairs, replacements, janitorial services and expenses relating to the Store and 7-Eleven Equipment." [Docket No. 1-6, ¶ 20(a).] And perhaps most importantly, the franchise agreement expressly states that the franchisee, as an independent contractor, controlled "the manner and means of and the conduct of your agents and employees, including the day-to-day operations of the Store and all Store employees." [Docket No. 1-6, ¶ 2.] The franchisee is responsible for the training of his employees and must "actively and substantially participate in the operation of the Store and . . . [has] full managerial authority and responsibility for the operation of the Store." [Id., ¶¶ 4(c), 31(f).] The franchise agreement bestows no such responsibilities on the franchisor. [See generally id.]

    In short, the franchise agreement shows with clarity that, while 7-Eleven does have certain control over the store, it does not exercise control over the day-to-day operations of the store. Like the franchisors in J.M.L., Simpkins, and Coalson, 7-Eleven has a clearly defined a limited role when it comes to how the store operates each day. It follows that, like in the cases discussed above, agency theories do not provide a basis for 7-Eleven to be held liable for the harms that Boutahli suffered as a result of the armed robbery. And, as other jurisdictions have held, whether a franchisor owes a duty under agency theories is synonymous with whether that franchisor is a "possessor of land" pursuant to Restatement (Second) of Torts §§ 344 and 328 E. Therefore, the Court concludes that 7-Eleven does not qualify as a possessor of land in this case. Because "New Jersey courts rely on the Restatement (Second) of Torts Section 344 to determine the duty of care owed to business invitees," Worster-Sims v. Tropicana Entm't, Inc.,

Civil No. 13-1981, 2014 WL 4978588, at *6 (Oct. 6, 2014); see Clohesy v. Food Circus Supermarkets, 694 A.2d 1017, 1022-23 (N.J. 1997); because Section 344 is restricted to "possessors of land," RESTATEMENT (SECOND) OF TORTS § 344; and because 7-Eleven is not a possessor of land, the Court concludes that 7-Eleven did not owe Boutahli a duty of care in this case. Therefore, the Court must grant 7-Eleven's Motion for Summary Judgment.

As to the other moving Defendants, North Bay and the Feil Organization, the only argument that Boutahli makes in his response to their Motion for Summary Judgment is essentially that if 7-Eleven did not owe Boutahli a duty of care, then North Bay[6] must have – after all, the argument goes, "[s]omeone must owe the duty of care to secure the premises." [Docket No. 93, at 23.] This logic is flawed. Just like 7-Eleven, North Bay and the Feil Organization do not qualify as possessors of land. North Bay and the Feil Organization objectively had less control over the property than 7-Eleven did, considering that the lease between 7-Eleven and North Bay fully transferred the property in question to 7-Eleven. Boutahli points to no facts to suggest that North Bay or the Feil Organization qualify as possessors of the land in question and the Court cannot find any such facts independently. Plainly put, North Bay and the Feil Organization indisputably have less control over the property than 7-Eleven does. They cannot, therefore, be deemed possessors of land. Their Motion for Summary Judgment will thus be granted as well.

---

[6] As noted above, Boutahli appears to abandon the argument that the Feil Organization is not entitled to summary judgment in his response. The Court therefore will not discuss the Feil Organization individually, but notes that the same reasoning that it relies on to grant summary judgment in favor of North Bay also applies to the Feil Organization. As such, the Court will also grant summary judgment in favor of the Feil Organization.

## IV. <u>**Conclusion**</u>

For the reasons expressed above, the Court will grant the moving Defendants' Motions for Summary Judgment. [Docket Nos. 90, 92.] It will dismiss as moot 7-Eleven's Motion to Preclude. [Docket No. 91.] An accompanying Order shall issue.


<u>June 17, 2020</u>                                         <u>s/Joseph H. Rodriguez</u>
Date                                                    JOSEPH H. RODRIGUEZ
                                                        United States District Judge